Austin Police, e The sole purpose of the grand jury is to make an initial finding of whether there is a probable cause to believe a person committed a crime and should be forced to face trial. That's it. In Antonio Buehler's case, we have three affidavits for arrest warrants sworn out by police officers. The testimony sworn in those affidavits was presented to a grand jury issued an indictment 15 months later. Conversely, we have videos from each of those arrests that show the officers lied in their testimony, that resulted in the wrongful arrest of Mr. Buehler and a violation of his civil rights. Taking the evidence in the light most favorable to the plaintiff as we must at the summary judgment stage, we must decide whether a reasonable juror could agree with us that Mr. Buehler was wrongfully arrested and I think that we have presented... So in each of the arrests, we have an affidavit. They're all this similar technique. We have an affidavit, an arrest warrant. He's arrested at that time. Not post indictment but at that time. Then we have subsequently 15 months later all of them presented to the same grand jury and you have in the evidence that we've presented the videotapes from various sources, dash cams and from civilians. You didn't file a reply brief. Your principal brief said that you would seek to supplement the record with those videos. Actually, I thought there was a problem with it based on the government's brief, city's brief, but then we called the clerk and learned that we had in fact filed those videos and the clerk assured me that they would be provided to you. They assured us yesterday. You filed a motion to supplement or you called to confirm that we... They were correct. We called to confirm that they had been filed correctly and they informed, the clerk informed us, yes, we had filed them correctly and then yesterday we verified to make sure they made it up here and they confirmed they made it up here. If that's not the case... Did Buhler testify in the grand jury also? Pardon me? Did Buhler himself testify in the grand jury as to any or all of the incidents? You know, he did testify in the grand jury, yes. Wouldn't the fact that Buhler and other witnesses that presented his side plus the fact that the grand jury didn't always return the proposed charges suggest that it isn't a taint? Do you have a case that says when the grand jury hears his story that he wasn't, he didn't spit, that could still be a taint? So the problem is the time between the arrest and the grand jury and that should not, that's the, you're looking at intervening cause, whether there's an intervening cause concept or a traditional tort concept and so in all of the cases that discuss an intervening cause, that cause, that ultimate thing could cut off the liability or the damages at that point. Our liability is 15 months of time period from the arrest until that point and the grand jury should not be cutting off, the grand jury determination should not be cutting off that time period in addition. That's not our law. What case do you have from our circuit that interprets that doctrine to still allow you to pursue? The cases in this circuit we believe were wrongfully decided for one thing and those cases were probably decided based on the particular facts in the circumstances that arose and caused that ruling to occur. It is the cases in each of the other circuits don't really conform with that. Even the ones that the city is citing are talking about this issue in the way that I just presented it. That is that the intervening cause, if it's going to cut off liability, cuts it off from the standpoint of after the grand jury indictment occurs. But I would also point out that each of those cases in the fifth circuit appear to be the arrest is post-indictment as opposed to in this case where the arrest is pre-indictment. If I'm reading their facts correctly, that's the way those things happen. There were no cops put on the person until they were indicted. I think there's a possibility of even distinguishing those cases because in this case we did get arrested pre-indictment. And so in this case, I don't think that those traditional tort concepts help get the city where they want to get, nor does the concept of preclusion get them where they want to get, and nor does the Supreme Court precedent in Gersten and Kaylee get them where they want to get. Gersten is only making a determination that a probable cause hearing is of some sort is required for defendants. You know, Gersten had the defendants in Florida were not getting any kind of probable cause determination. That's what they're determining in Gersten is to make sure that they're going to have some kind of probable cause determination in the initial phase of the case and Kaylee is merely taking that a step further and saying we're going to freeze your assets preliminarily. You're going to have a trial on the forfeiture but we're going to seize those assets preliminarily. There's nothing in either of those two cases that supports the city's argument that there should be a preclusive effect from the grand jury determination to cut off all liability. Just in standard criminal procedure, we have many procedures that subsequent to that time period where we do raise the issues of probable cause and they do get relitigated, motions to suppress, motions to quash indictments. There can be a writ as Gersten even mentions, a writ of habeas corpus that can be appealed all the way up that would address the grand jury's due process and whether or not a probable cause determination was found. So none of those cases are helpful to them in any way. Mr. Beeler himself, looking at the general facts of the case, is a graduate of west point, an Iraqi war veteran, military service that led him to those conditions, post graduate degrees from Stanford and Harvard. He formed the peaceful streets project and this has really been a thorn in the side of the Austin police department. He formed that after witnessing police abuse and then being subjected to police abuse himself. That's the first arrest. That's what caused the formation of the peaceful streets project. You then see a concerted effort by the city of Austin to take out the movement, to stop the movement of this proceeding. Looks like you have a question. No, no. Okay. The first arrest is Aborski. That's the only one of the three that went to trial? That's the only one that went to trial, yes. The others were dismissed. And so would you have received the grand jury testimony for that trial so you had the testimony? So I did not try. The underlying criminal case I did not try. The case Millie Thompson did, who is here, she was provided during that trial. There was an in-camera review of some information in that case. There was an in-camera review of some of the testimony in that case, and some of that information was provided to miss Thompson for cross examination of the witnesses. He was found not guilty in that trial. We also took depositions of the officers. In the depositions of the officers, we asked them, at least most of them were asked, did they say the same thing in the grand jury, and they would confirm that. We know that's the case, too. You have an affidavit of warrant. Either one investigator is going to present all of those affidavits in the fashion you were talking about in the last case, or each of the officers can testify and they're going to be testifying consistent with their affidavits more than likely. The key discrepancy in those affidavits really is that they're pretending as though they're fearful of Mr. Buehler, which is why I give you his background. There's no reason, and they have no real fear of Mr. Buehler whatsoever. The city's brief tries to kind of suggest that maybe he has called to arms, and we know those arms are guns. The only thing he's ever armed with is a camera and his voice, and his voice has, unfortunately for the city, been very successful in empowering a movement, not just in Austin but in Texas and many places throughout the country. That's the primary discrepancy that then you're saying they might have embellished? So what happens is that's the primary discrepancy, and if you watch the videos... But he did admit he cussed, and then he is in front of the grand jury. They would have seen him firsthand, demeanor and his voice. They sure would have. And that's why... Well, no, I'm sorry. The grand jury didn't get to see the videos. Is that what... No, I'm saying his own, whether or not he's a fearful personality, and I think he did either in an affidavit or himself in the grand jury say he was cussing at one of these incidents. So the jury would have assessed the truth or the falsity of an officer's representation that he was fearful. So the jury did... Wait. Did you say grand jury? The grand jury. Okay. If I still look at quadra and our case law is saying that's a false... Yeah. So the grand jury did not get to see the videos and did not get to assess the discrepancy. They merely heard the officer's saying the officer is lying about that. The officer is not really fearful. The officer is not really concerned for his safety. If they had had the videos that the jury trial had, they would have been able to see that. If the other two cases went to trial, as you can... The evaluation you can do. Now, I would point out as an aside, I don't think Judge Lane did that evaluation, and I think that one of the results that can occur from this hearing is it be remanded to tell Judge Lane he must actually weigh the evidence to determine if there is evidence of taint or anything that would comply with hand in the case that... What was the lie about the spitting in the face? There's actually a series of lies and I did set those out in the brief. That is definitely one of them. Pardon me? That would have been visible on the video, of course. Exactly. So what you would be looking for in the video, and that's why I point that out in the brief, and that's one of the things that's important. You would see a spitting motion and you would see something, you know, saliva coming out at some point, and you would see a wiping motion or something to indicate that, and there's no such action whatsoever. So that's one of the ones that's easier to see. There's also in that particular, that first arrest, officer Borski attempts to say that he, that Antonio Beeler is the aggressor, which when you see the videos, you can see Antonio is not one second the aggressor, not when he's videotaping or attempting to videotape because he was actually too nervous and he didn't get his phone on, so his phone doesn't video. You're in no bill that charge, though, did you? They no billed the harassment charge, yes. They sure did. That's the spitting charge, yes. But they came back with probable cause on the failure to obey. Correct, which was not really charged. They had initially charged interference and they came back with failure to obey orders. Wouldn't that make the arrest based on probable cause? So the determination that the grand jury is making is probable cause based on, actually, as Judge Huggins has pointed out, all the facts that are presented to them, and in this case even for a different charge. What matters is what probable cause, what facts the officer based his determination on and matters if, in fact, the grand jury was presented all the information. So what we're saying is both those things, that the officer did not have probable cause at the scene and that when he presented the case to the grand jury, he lodged the same lies that he did in his affidavits, that, in fact, that he was in fear of his safety and that the person was interfering with his duty. I mean, what's your argument that there was no probable cause at all for the arrest even for the failure to obey? Oh, he didn't fail to obey any order. He was not given an order that he didn't obey. And what I believe that Ofersborsky is trying to say is that he was in my space and he was not listening to me to stop doing what he was doing. But when you watch the video, he's not doing anything in violation of any order. He's merely standing there holding a camera, appearing to be videotaping, saying what are you doing, officer? What are you doing, officer? He's being arguably, didn't the officer say he was being loud and abusive? That is what the officer said and that is not true. And so that is, in fact, you raised one of the other points I list in the brief is that the officer alleges that he's being argumentative and loud and abusive and you can watch in the video that not the video he taped but the other videos around, that is not what happened. He was not argumentative. There are audio. So it's kind of combines a variety of that particular one combines a variety of audio and video. There is that was at a gas station and so there is video from the 7-Eleven gas station. There is a person across the street who sees what's happening and he pulls out his camera and videotapes and we had that videotape. You then have dash cam and you have body mics on some of the officers. So it's a combination in that particular case. I think it's probably a combination in each of the cases too. That one is one that you can see the differences pretty glaringly. You'll also see in the grander scheme of things the effort to control this movement by creating policies and rules instead of encouraging the exercise of the first amendment right, rather discouraging it by providing a rule that a particular training bulletin that's in evidence targeting the arrest of Mr. Beeler where they're saying that the top of the chain of command is saying to the officer that you have been arrested. It's with the subject line Antonio Beeler. You can arrest the person if you tell them to do something and they don't do it. So just tell them anything to do something. Now, Mickey Osterreicher from the national photography association wrote to and called and spoke to the chief and said that is insufficient. You cannot in fact tell someone to issue a random order. That is an unlawful order and offered for free to help the chief draft an appropriate policy on videotaping and offered for free to train the Austin police department. The chief declined both of these services. The case that you can think from any circuit where taint was the plaintiff's burden to show taint was met. It's analogous. The best one is Sykes which is one of the city sites and in Sykes they did exactly what I'm asking is to look at the affidavits, look at the videos and there's a great discrepancy almost precisely the same discrepancies with the exception of that the officer appeared intoxicated. In that case none of these officers appear intoxicated but the facts are very similar and they did in fact find that taint and that's the Sykes case. Thank you. Thank you. Okay. Thank you ma'am. You have time left. Okay. Ms. Edwards. May it please the court. What you've heard from counsel is basically merits arguments. Judge Lane did not issue an order based on the merits, in fact he specifically stated he was not going to the merits, that they could not reach the merits. The law in this circuit is very clear and free of conflict. It's been almost three decades that the law in this circuit has said that a finding by an independent intermediary conclusively establishes probable cause. Back to the point of arrest. That's correct, your honor. And in this case, we actually had four independent intermediaries, although Judge Lane only relied on the grand jury. I would assume he relied on the grand jury based on this court's findings in Murray v. Earle in 2005, where in footnote 51 you identify that there are some circuits that find otherwise. In an overabundance of caution in this case, Judge Lane relied solely on the grand jury findings. But there were also three separate magistrates who found probable cause. So for three decades, this court has found that an independent intermediary insulates and that counsel has given you no reason to find otherwise. As recently, Justice Smith, as August of 2015, this court found that an appeal in an unpublished opinion of Allen v. Jackson County, Mississippi, this court found that the grand jury returned an indictment. And based on that, the appellant must show that the deliberations were tainted. And as Judge Lane emphasized, there's no evidence in the record. There's a great deal of speculation and guesswork and accusations, but there's no evidence in the record. As you recognize, Justice Higginson, they did have the grand jury transcript from the criminal proceeding. Yes, your honor. And she's just admitted to that. But no excerpt from the grand jury transcript was ever submitted as evidence. There is no evidence whatsoever from the grand jury. So they had no evidence of taint of the grand jury and no evidence of taint of three separate magistrates. Notably, they've never pled taint in this case. They amended their pleading twice. The second amended complaint is the live pleading. Never does the word taint appear there. Nor did it appear in their responses to the city's Rule 12 dismissal motion, in the response to the city's Rule 12C dismissal motions. We had two dismissal motions. They never raised the issue of taint. They only learned of the possibility of taint as an issue in a ruling from Judge Lane. And so for the first time, they raised it in response to summary judgment. Nowhere in their pleadings do they allege taint of a magistrate or a grand jury. It is hard to prove taint because of grand jury secrecy rules. And yet- Your point is the first grand jury, first incident, they had the transcripts. But as to the second and third, do you agree with them that the Sykes case is the best sort of blueprint for how a plaintiff can actually still prove taint, even though they don't have access to the material? I think they've never shown they didn't have access to the material. Instead, they- Well, do we know whether, would they know whether the videos were shown to the grand jurors or not? There's no evidence in the record that they were or they were not. I know. So that's sort of the difficulty of the taint logic is that they can't get access to that information. But as you recognize, they heard the testimony of Mr. Buehler himself. So- Was he in each grand jury? Was it one overarching grand jury? There was only one grand jury for all of the four charges that were brought against Mr. Buehler. The fourth charge being that he disclosed an officer's undercover status on camera and posted it to social media. He was invited and accepted the invitation to speak to the grand jury. I can't tell you the process by which he spoke. But he did speak, he testified. He admitted in deposition that he testified before the grand jury. Were there other defense witnesses? There were several other witnesses that testified before the grand jury. And do you have any case, do you know, would seem intuitive to me a little bit, that if a grand jury heard both sides as to debatable issues like was he fearsome, then presumably the fact that they particularized their indictment, didn't give the felony, did give the misdemeanor, suggests that they weren't misled, they just did a balance. Do you have a case that sort of goes into that? I can't cite it for you at this moment. There are cases that cite to that. But as you said, the grand jury came back with lesser charges. They came back with the failure to obey. And frankly, there is no dispute in that. Because even in the second amended complaint, he admits that at each arrest, the officers gave him orders to step back or move. He simply disagrees with those orders. He is of the position that those are unlawful orders. Why? Because he says so. Those orders were all issued while the officers were conducting investigations. Twice, they were trying to perform DWI, standard field sobriety tests. And another time, they were executing an arrest warrant. Now, 6th Street in Austin is somewhat like Bourbon Street in New Orleans, where you have many young people making bad decisions and mistakes. Terrible thing to say about Bourbon. I withdraw my statement, Your Honor. And it is the role of law enforcement to help these young people make better decisions or stop them in the middle of those decisions. And that's all these officers are doing. Is they're making arrests based on probable cause or they're attempting to determine whether or not there's probable cause to arrest or detain these subjects who appear to be intoxicated. There's no basis for interference. In the January 1st arrest. That goes probably further than you want. Whether or not he was malicious, whether or not they'd begun to really resent his involvement isn't relevant to the Taint Inquiry because what his state of mind was wouldn't be relevant. It is not relevant, Your Honor, because the... Maybe it's an overstatement that the record doesn't suggest there's also animus directed at him. But there's no basis for animus and the record does clearly establish that. There are hundreds of videos by Mr. Buehler in the Peaceful Street Project. Hundreds of videos. They follow APD nightly. Now, if APD wanted to convene on Mr. Buehler, we would be announcing his whereabouts. It's the other way around. It is Mr. Buehler who determines where the law enforcement officers are performing their duties and broadcast that so that everyone convenes on law enforcement. It is in the record that, in fact, Mr. Buehler once called, since this has been ongoing in the home of his girlfriend, APD, knowing who he was, responded to the call, addressed any concerns of the resident and Mr. Buehler. There's also been bench warrants issued for Mr. Buehler on his criminal proceedings for these arrests where he did not appear. And the magistrates in those cases issued best warrants. Now, APD could easily have executed on those warrants, but being prudent, showing restraint, we never executed on those warrants. Of the hundreds of videos... If the video, would the video of the incidents contradict conclusively statements that he's made, especially the one that he spat, would that create a triable issue as to taint? No, Your Honor, and I don't think that goes to taint at all. There may be a disagreement on that issue, but that doesn't go to taint. And the charge ultimately was failure to obey, so that's not really relevant. But to answer your question, the video is dark and small and grainy at night, and so you cannot see it, but you can hear Officer Oborsky clearly say spontaneously, and I believe we submitted a transcript as well, oh, you spat on me? So it is a spontaneous utterance by Officer Oborsky, who would have no reason to make such an accusation. This is a nationally honored police officer by MADD, by Mothers Against Truck Drivers, for the work he does in deterring drinking and driving. But I think this gets away from what this case is really about, and that is three different magistrates and one grand jury found probable cause. Now they only have to find probable cause to arrest. That's all. They're not there to determine guilt or liability, just probable cause. And they found that independently. It was the appellant's burden to show taint. They never even pled taint, not until their summary judgment response, after they learned of the possibility of taint as a defense from a ruling by Judge Lane, for the first time they raised the issue of taint. But they submit no evidence, as Judge Lane recognized. All they do is they say, well, their expert says he thinks the police were motivated by malice. Well, on January 1st, no one knew who Mr. Mueller was. This is the first time anyone's ever encountered him. They had no idea, so they had no reason to have any malice against him. As is in the record from the officer's affidavits from that night, we had never seen anyone come up and just inject themselves into an arrest that they knew nothing about, with such anger and such hostility. And it raised concerns for them. Why is he interfering? The passenger in the vehicle that he alleges he was trying to defend, that was being abused, was texting. Now, police officers are trained not to allow subjects to text from a scene, concerned that they may be drawing reinforcements and they'll be outnumbered. And suddenly, Mr. Mueller arrives and he is so hostile. Now, it's very clear that in every instance, no one was asked to stop filming. In all of these arrests, they're all told, you can film. You simply need to be at a safe distance. Like other metropolitan police forces, the Austin Police Department follows the FBI's 21-foot zone of safety. That was established by the FBI as the minimum distance to keep a safe distance from subjects, from witnesses, from anyone who has no business injecting themselves. We never erased any of the photographs or video taken by Mr. Mueller. And why would we want to interfere with the filming? In the January 1st arrest, you would see on the video that Officer Oborsky pulls in to the 7-Eleven behind this subject who he has flagged over. He asks a few questions, determines there is intoxication, a reasonable suspicion of it. He then repositions his vehicle so that he can capture this on his dash camera. When Officer Schneider arrives, he positions his vehicle so he can catch the other side of the vehicle. So, these officers have intentionally positioned their vehicles so they can capture what they're doing on camera. They're also at a very famous 7-Eleven, which is on a major thoroughfare exiting 6th Street, which is where we catch many subjects suspected of intoxication. They know the 7-Eleven has security cameras, so they have no reason to interfere with anyone trying to film or photograph them. In fact, the driver of the passenger in the vehicle with Mr. Mueller, he continued photographing unimpeded. He in no way injected himself into the situation. The officers had no concern about him, so he also photographed. So, why are we trying to stop the photographing? The same thing in the other incidents. In the next incident, which is on August the 26th, again, Peaceful Streets Project is there with many members, all filming. They all cooperate, ask to step back, ask to move. They all do so. It is only one individual who refuses to comply with lawful commands. Now, he admits that in his pleading, that he was asked to step back, he was asked to move, and in each case, he says that's not a lawful order and he would not do so. So, there's the failure to obey that the grand jury found. Now, counsel had previously argued that that is a lesser charge, but all of the case law says that it doesn't matter, you're not there to sustain a charge, you're there to sustain probable cause to arrest, and whether the probable cause was based on that charge or any other charge is not relevant. The argument about whether it is pre- or post-indictment is also refuted by the case law. This circuit has consistently held since 1988 that a grand jury or a magistrate or both, as in this case, in fact, in the Allen case, Justice Smith, the court said, this appeal is utterly meritless and could be rejected on numerous grounds. We note only the most obvious, and went on to talk about the grand jury returned an indictment. They show no Fifth Circuit case finding otherwise. The same is true of the U.S. Supreme Court as recently as 2014. They were quoting Gerstein, which is from 1975, and they say that the grand jury says without review, oversight, or second guessing whether probable cause exists. We have that in this case. The Cayley court said you cannot demand a do-over. You cannot pit the judge against the grand jury. As Judge Lane said, he had to follow Fifth Circuit precedent, which is clear and without conflict. And that's what he did in this case. When you say without conflict, you mean within our court? Yes, that's correct, Your Honor. Of the six cases which this court, most recently until 2015, they've all been very clear. They've not wavered at all. Well, I think Ms. Silverman has acknowledged that, that the case law is in place. And she's given no reason why you should deviate from that. I mean, under the rule of orderliness, which she does— Well, we understand all about the rule of order. Yes. So— I mean, it seems to me you've made your point. So unless there's any further questions— Okay. Thank you, Ms. Edwards. Thank you. Okay, Ms. Silverman, back to you. Thank you. If this is a merits argument, then summary judgment shouldn't be granted. She indicated there were four independent intermediaries, as though those four people looked at all the arrests. That's not what happened. One magistrate looked at the arrests, and then the same grand jury looked at all the arrests. One magistrate looked at the second arrest. So it isn't that there's four independent decisions. As far as— Well, I guess the question really is, given the case law that you've acknowledged in the record as it stands in this case today, obviously our case law can be changed in bank or by the Supreme Court, but as it exists today, where are you in terms of the decision that we should render? As it exists today, I think you have sufficient evidence of taint to send it back for a new evidence, or for Judge Lane to do the balancing that I don't think he actually did based on his statement. Summarize for us—and again, I mean this as a friendly question—summarize for us what you think the evidence is that's in the record, that we will find in this record, that will indicate taint under our case law. Our case law, unfortunately, doesn't say exactly what taint should be, but if you look at some of the other circuits, then you can see they talk about perjury by the officer being something to look at. That's why the Sykes case, I thought, was the best one, although some of the other cases—almost all of the cases in the other circuits say, here's what taint can be, and they say perjury and submitting false evidence, those kinds of things, and so in this case, the most powerful thing you can look at is look at the affidavit, look at what the officer says, and then watch the videos that come from that, and you will see the discrepancies, you will see the false statements. I would also like to point out that— I'm denying that you actually got the grand jury because of the trial. So actually, no, we did not. So what happened is, is the judge in the municipal trial court said, I will review the transcript in camera. He reviewed it in camera, and he allowed that defense attorney to have, for purposes of cross-examination, not to give to us, the plaintiff's counsel, but for purposes of cross-examination, some portions of that. Now, you do have the trial transcript, so you would have the benefit of anything that she had— Anything that was material to impeach the officer. Anything that was material, at that point, to impeach on that first arrest, and then, as you see, the jury found him not guilty. So that actually proves the point. But you haven't given any trial transcripts suggesting anything to us? You have the whole trial transcript, too, from the first trial. But what did you identify as showing a false statement by that officer in front of the grand jury? So, I have not gone through, specifically, through the trial transcript, but I can. The legal question I had, because of your time, in Sykes, did the plaintiff himself get the opportunity to testify in front of the grand jury? I don't know. I don't know if the plaintiff testified in front of the grand jury. Whether it's in there, and I missed it, I didn't. That seems pretty salient. They would have heard his side saying what he just said didn't happen. But they heard the—it's important to hear the two sides. That actually is a good aspect of that particular hearing, but they did not see the video, and so they made a determination made only on the officer's testimony and any other testimony presented. They didn't have the video to be able to show them that the decorated officer that she's speaking of wasn't the one that was telling the truth versus Mr. Beeler. Also, in Malley v. Brigg, there's a footnote that's dropped that indicates that qualified immunity—they don't like that qualified immunity breaking the chain of custody there. It's inconsistent with 1983. And so that particular footnote is another good reason for the Fifth Circuit to be re-looking at this. Of course, that might be at a different stage of the proceeding. Also, the policy reasons of re-looking at that because perhaps it was a misunderstanding of what the Supreme Court—I'm not really sure where the rule comes from, but perhaps it was a misunderstanding of where the Supreme Court would go on this issue, and I think the Supreme Court is showing that it would not support this argument, and I think that the case law at the Supreme Court level is only talking about an initial stage. And so there's every reason for that to be re-looked at at that point. I also think that it's still potential to distinguish the fact that the cases in the Fifth Circuit appear to all be post-indictment, and so our arrest occurs pre-indictment. And it occurs immediately at the scene with an affidavit that is presented only to a magistrate. That is a one-sided proceeding with no confrontation, no cross-examination, and no presentation from the defendant in any way in front of the magistrate to get the arrest warrant, and no video shown of any sort at those proceedings. And so there's that small possibility there as well. Okay. Thank you very much, Ms. Silver. Thank you. We have your argument, and we'll stand in recess. Before we take up the next case, we'll be in recess.